**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

CASE NO: _____

WATER STREET SEAFOOD, INC.,
GREG ABRAMS SEAFOOD INC.,
BLUE PARROT OCEANFRONT
CAFE INC., TARPON DOCK SEAFOOD
MARKET, G.A. FISH, INC., WJ2 LLC,
SGI RENTALS, INC., STEVE LIMA a/k/a
CAPTAIN SHELLEY SEAFOOD, and
JOHN S. "STAN" GRANT, each individually
and on behalf of all others similarly situated,

   Plaintiffs,

vs.

BP, p.l.c.; BP PRODUCTS NORTH
AMERICA, INC.; BP AMERICA, INC.;
TRANSOCEAN, LTD.; TRANSOCEAN
OFFSHORE DEEPWATER DRILLING, INC.;
TRANSOCEAN DEEPWATER, INC.;
HALLIBURTON ENERGY SERVICES, INC.;  and
CAMERON INTERNATIONAL CORPORATION
f/k/a COOPER CAMERON CORPORATION,

   Defendants.
_____/

## CLASS ACTION COMPLAINT

  1. Plaintiffs, WATER STREET SEAFOOD, INC., GREG ABRAMS SEAFOOD INC., BLUE PARROT OCEANFRONT CAFE INC., TARPON DOCK SEAFOOD MARKET, G.A. FISH, INC., WJ2 LLC, SGI RENTALS, INC., STEVE LIMA a/k/a CAPTAIN SHELLEY SEAFOOD and JOHN S. "STAN" GRANT, (collectively referred to herein as "Plaintiffs"), by their undersigned attorneys, on behalf of themselves and all others similarly situated, and pursuant to Fed.R.Civ.P. 23, hereby file this Class Action Complaint against Defendants, BP, p.l.c, BP PRODUCTS NORTH AMERICA, INC., BP AMERICA, INC. (collectively referred to

CASE NO. _____

herein as "BP" or "the BP Defendants"); TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC. (collectively referred to herein as "Transocean" or "the Transocean Defendants"); HALLIBURTON ENERGY SERVICES, INC. ("Halliburton"); and CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION ("CAMERON"), and allege as follows:

### NATURE OF ACTION

2. This is a civil action seeking damages and other appropriate relief arising from the unlawful and improper conduct of Defendants towards Plaintiffs and all those similarly situated. Defendants' conduct resulted in an oil spill, explosion and fire that caused the sinking of a semi-submersible mobile offshore oil drilling platform known as Deepwater Horizon, on or about April 20, 2010. Defendants were operating Deepwater Horizon to drill for oil in an area known as the Macondo prospect in Mississippi Canyon Block 252 on the outer Continental Shelf of the United States ("the Deepwater Horizon site"). As a result of the catastrophic fire, explosion and failure of the Deepwater Horizon and its safety devices, there is an ever growing oil slick of approximately 600 square miles, and at least 1.6 million gallons of crude oil have leaked from the oil well it was completing at the time of the explosion. Thousands of barrels of oil continue to leak from the well every day. On April 30, 2010, the State of Florida declared a state of emergency because of the oil spill. The oil slick has caused and will continue to cause harmful effects to Florida's and the United States' marine and coastal environments, and their contiguous environs, which will severely impact activities Plaintiffs and all others similarly situated rely on for income, such as, but not limited to, commercial fishing, seafood processing, distribution and consumption, and tourism and tourism related activities.

CASE NO. _____

## PARTIES

### Plaintiffs

3.  Plaintiff WATER STREET SEAFOOD, INC. is a wholesale seafood business, is a Florida corporation owned and operated by Steven C. Rash, and has its principal place of business located at 391 Market Street, Apalachicola, Florida.

4.  Plaintiff GREG ABRAMS SEAFOOD INC. is a wholesale seafood business, is a Florida corporation owned and operated by Greg Abrams, and has its principal place of business located at 234 East Beach Drive, Panama City, Florida.

5.  Plaintiff BLUE PARROT OCEANFRONT CAFE INC. is an oceanfront restaurant, is a Florida corporation owned and operated by Steven C. Rash, and has its principal place of business located at 68 West Gorrie Drive, St. George Island, Florida.

6.  Plaintiff TARPON DOCK SEAFOOD MARKET, is a retail seafood market, is owned and operated by Greg Abrams Seafood Inc. and Greg Abrams, and has its principal place of business located at 234 East Beach Drive, Panama City, Florida.

7.  Plaintiff G.A. FISH, INC. is a commercial fishing business, is a Florida corporation owned and operated by Greg Abrams, and has its principal place of business located at 234 East Beach Drive, Panama City, Florida.

8.  Plaintiff WJ2 LLC is a commercial fishing business, is a Florida corporation owned and operated by Steven C. Rash, and has its principal place of business located at 391 Market Street, Apalachicola, Florida.

9.  Plaintiff SGI RENTALS, INC. is an oceanfront recreational equipment and jet ski rental business, is a Florida corporation owned and operated by Steven C. Rash, and has its principal place of business located at 68 West Gorrie Drive, St. George Island, Florida.

CASE NO. _____

10. Plaintiff STEVE LIMA a/k/a CAPTAIN SHELLEY SEAFOOD is a commercial fisherman who owns state and federal fishing licenses and permits, who catches fish in and around northwest Florida and in the Gulf of Mexico, and whose business and livelihood is based on catching fish for commercial sale in and around northwest Florida and in the Gulf of Mexico. Mr. Lima's home port is Apalachicola, Florida.

11. Plaintiff JOHN S. "STAN" GRANT is a Florida commercial oysterman who harvests oysters in and around Florida as a result of owning an oyster llicense. Mr. Grant's business and livelihood is based on the commercial sale of the oysters he harvests. Mr. Grant's home port is Apalachicola, Florida.

12. CLASS MEMBERS are those persons or entities who, along with Plaintiffs, are harmed by Defendants' actions as alleged herein.

**Defendants**

13. Defendant BP, p.l.c.. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

14. Defendant BP PRODUCTS NORTH AMERICA, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

15. Defendant BP AMERICA, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

16. Defendant TRANSOCEAN, LTD. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does

CASE NO. _____

business in the State of Florida.

17. Defendant TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

18. Defendant TRANSOCEAN DEEPWATER, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

19. Defendant HALLIBURTON ENERGY SERVICES, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

20. Defendant CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

**JURISDICTION AND VENUE**

21. Jurisdiction of this Court exists by virtue of 28 U.S.C. §1332(d)(2) and the Class Action Fairness Act ("CAFA"). At least one Plaintiff and/or one class member are citizens of a different state than at least one Defendant, and the aggregated amount in controversy in this action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs. Jurisdiction also exists pursuant to 23 U.S.C. §1331 because the harm to Plaintiffs as alleged herein arose from Defendants' conduct on the Continental Shelf and has affected the coastal areas of Florida which gives rise to federal jurisdiction (and incorporating the laws of Florida) pursuant to 43 U.S.C. §§ 1331(f)(1), 1333(a)(1), and 1333(2)(a).

CASE NO. _____

22. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), (b), and/or (c) because a significant number of class members reside in this district, a substantial part of the events and occurrences giving rise to this action occurred in this district, a substantial portion of property affected by the conduct alleged herein is located in this district, and Defendants are subject to the jurisdiction of this Court.

23. Any prior notice to Defendants that may have been required is waived by the imminent threat to the legal interests of Plaintiffs.

## **COMMON FACTUAL ALLEGATIONS**

24. The BP Defendants hold the U.S. government granted lease allowing them to conduct oil exploration and conduct oil exploration and production related operations in the Macondo prospect in Mississippi Canyon Block 252. The BP Defendants were controlling, managing, leasing, using, and/or operating Deepwater Horizon in order to conduct its oil exploration and production venture on April 20, 2010, when it caught fire and catastrophically failed and sunk, causing the massive oil spill that is the subject of this lawsuit.

25. The Transocean Defendants were the owners, managers and/or operators of the Deepwater Horizon when it caught fire and catastrophically failed and sunk on April 20, 2010, causing the massive oil spill that is the subject of this lawsuit.

26. At all times pertinent to this lawsuit, the BP and/or Transocean Defendants were responsible for the safe operation of Deepwater Horizon such that a massive oil spill should not have occurred, or should have been prevented from occurring.

27. At all times pertinent to this lawsuit, Plaintiffs and Class Members relied on the safe operation of the Deepwater Horizon site to prevent the massive oil spill that has harmed and will continue to harm their livelihoods.

CASE NO. _____

28. Drilling platforms such as Deepwater Horizon use a device called a blowout preventer ("BOP") which is supposed to deliver a hydraulic-powered guillotine-like slice to the drill pipe in the event of a problem and seal the well off. All U.S. offshore oil rigs are mandated to have BOPs subject to regular inspection. On Thursday April 28, 2010, in an earnings call to investors, Defendant Cameron C.E.O. Jack Moore admitted that Cameron manufactured and supplied the BOP on Deepwater Horizon. BOPs are designed to operate automatically in the event of a problem without operator input, however, upon information and belief, BP and/or Transocean personnel also tried to activate the BOP themselves before evacuating the platform and it did not activate. Thus, Defendant Cameron's BOP failed to operate as intended and was defective as designed and/or manufactured.

29. Upon information and belief, during a 2009 earnings call to investors, Transocean admitted knowledge of BOP problems on at least some of its oil drilling platforms.

30. Defendant Halliburton had been engaged by the BP and/or Transocean Defendants to conduct cementing operations on the well. Halliburton has stated that it completed the cementation of "the final production string" twenty hours before the accident, and that tests on the integrity of its casing were completed. But, placement of a final cement casing plug had not yet occurred at the time of explosion. Halliburton's improper and negligent conduct in its cementing duties caused and/or substantially contributed to the explosion and resulting oil spill.

31. The catastrophic explosion and failure of the Deepwater Horizon and its safety and spill prevention systems, and the resulting oil spill, were caused by Defendants' negligence, thus rendering them jointly and severally liable to Plaintiffs and Class Members for their damages.

CASE NO. _____

32. Defendants also committed various statutory and regulatory violations pertaining, but not limited to, federal and state laws on oil exploration and pollution, workplace safety, marine safety and testing of the BOP. These violations resulted in the harm and damages to Plaintiffs and Class Members.

33. The massive oil spill resulting from the Deepwater Horizon incident has harmed, will harm and will continue to harm Plaintiffs and Class Members not only because of Defendant's conduct, but also because the nature of the spill makes containment and clean-up procedures ineffective, thus causing contamination and pollution of the United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs.

34. Defendants knew or should have known of the risks of a massive oil spill as a result of their oil exploration activities and the subsequent harm to Plaintiffs and Class Members, the United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs.

35. Upon information and belief, Defendants did not use appropriate measures and take appropriate actions to prevent the massive oil spill at the Deepwater Horizon site, and thus failed to prevent the harm and damage to Plaintiffs, Class Members, the United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs.

36. Upon information and belief, Defendants' intentional and reckless conduct resulted in a failure to install available and appropriate safety and spill prevention devices that would have prevented the oil spill or, at the least, minimized the oil spill, had such devices been installed.

37. Although the full extent of the harm caused by the Deepwater Horizon oil spill cannot be ascertained at this time, the oil spill has damaged and will continue to damage the

CASE NO. _____

livelihoods and income of Plaintiffs and Class Members.

## **CLASS ACTION ALLEGATIONS**

38. Plaintiff brings this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of the Rule 23.

39. The proposed class is initially defined as:

> All persons or entities who, within the applicable statute of limitations preceding the filing of this action and up to the date of class certification, earn income in, or make their livelihood from Florida's "Coastal Zone" (as defined by 43 U.S.C. § 1331(e)), and who, as a result of the oil spill emanating from the site of the Deepwater Horizon explosion and fire on April 20, 2010, have thereby suffered a legally cognizable loss and/or damages.

And the following sub-class of Florida commercial seafood industry persons or entities, defined as:

> All Florida persons or entities who, within the applicable statute of limitations preceding the filing of this action and up to the date of class certification, derive or derived their income from the commercial fishing industry by way of fishing, harvesting, processing, wholesale distributing, or selling to the public, marine life found in Florida's "Coastal Zone" (as defined by 43 U.S.C. § 1331(e)), and who, as a result of the oil spill emanating from the site of the Deepwater Horizon explosion and fire on April 20, 2010, have thereby suffered a legally cognizable loss and/or damages.

And the following sub-class of Florida tourism industry persons or entities, defined as:

> All Florida persons or entities who, within the applicable statute of limitations preceding the filing of this action and up to the date of class certification, derive or derived their income from tourism and tourism related activities in and around Florida's "Coastal Zone" (as defined by 43 U.S.C. § 1331(e)), and who, as a result of the oil spill emanating from the site of the Deepwater Horizon explosion and fire on April 20, 2010, have thereby suffered a legally cognizable loss and/or damages.

The Class and Subclasses are collectively referred to herein as the "Classes."

CASE NO. _____

40. Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

41. Excluded from the Classes are Defendants, their respective parents, subsidiaries, affiliates, principals, officers and directors, as well as any entity in which they have controlling interests.

42. The number of Class Members is expected to be in the thousands, so the joinder of all members is impracticable. All injuries sustained by any member of a Class arise out of the same conduct of the Defendants which resulted in the harm to Plaintiffs.

43. Common questions of law and fact exist as to the Classes and predominate over any questions that may affect individual Class Members. The Defendants' conduct that resulted in the massive oil spill emanating from the Deepwater Horizon site is generally applicable to the entire Class. These common factual and legal questions include, but are not limited to:

a. Whether, and to what extent, Defendants' actions were negligent, and thus caused harm and damage to Plaintiffs and Class Members;

b. Whether, and to what extent, Defendants were responsible for the safe operation and spill prevention measures of the Deepwater Horizon oil exploration platform;

c. Whether, and to what extent, Defendants owed a duty to Plaintiffs and Class Members to operate the Deepwater Horizon oil exploration platform in such a manner so as to prevent an oil spill and/or substantial threat of an oil spill into the United States Gulf Coast area, including the coastal areas of Florida;

d. Whether, and to what extent, Defendants' actions caused, proximately caused, or contributed to the fire and catastrophic failure of the Deepwater Horizon and/or its safety and spill prevention systems, thus resulting in the massive oil spill;

CASE NO. _____

    e.    Whether, and to what extent, the massive oil spill has caused environmental or other damage;

    f.    Whether, and to what extent, Defendants are strictly liable for engaging in an abnormally dangerous activity;

    g.    Whether, and to what extent, Defendants are strictly liable to Plaintiffs and Class Members;

    h.    Whether, and to what extent, Defendants negligently maintained and/or operated Deepwater Horizon;

    i.    Whether Defendants negligently failed to take reasonable, appropriate, and/or otherwise available measures to prevent, minimize, or contain the oil spill; and

    j.    Whether, and to what extent, Plaintiffs and Class Members were harmed and suffered damages as a result Defendants' conduct and, if so, the appropriate measures of damages incurred by Class Members.

44.    The claims of the Class representative are typical of the claims of the Classes in that Plaintiffs, like all Class Members, have suffered injury and/or will continue to suffer injury from Defendants' conduct.

45.    Plaintiffs will fully and adequately represent and protect the interests of the Classes because of the common injuries and interests of the Class Members and the conduct of Defendants as to all Class Members.  The interests of Plaintiffs are coextensive with the interests of Class Members, and share common rights of recovery arising from the same essential facts and circumstances.  Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation.  Plaintiffs have no interest that is contrary to, or in conflict with, those of the Classes they seek to represent.

CASE NO. _____

46. A class action is superior to all other available methods for fair and efficient adjudication of this controversy. There is no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

47. Class certification is also appropriate in this action because:

a. Pursuant to Fed.R.Civ.P. 23(b)(1)(A), the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible duties for Defendants under the law alleged herein.

b. And/or, pursuant to Fed.R.Civ.P. 23(b)(3) the questions of law and fact common to all Class Members predominate over any questions that might arise as to an individual member, such that a Class Action is the superior, fair and efficient method of adjudicating this controversy where, as here, individual claims would be identical or nearly identical.

## COUNT I
## NEGLIGENCE
## (Against All Defendants)

48. Plaintiffs incorporate by reference the allegations in Paragraphs 1–47 above as if fully set forth herein, and further allege as follows:

49. The fire and catastrophic failure of Deepwater Horizon and its safety and spill prevention systems, which resulted in the massive oil spill and harm to Plaintiffs and Class Members as alleged herein was caused by Defendants' concurrent negligence.

50. The Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention devices, were in the care, custody and control of Defendants at the time of the incident giving rise to this action.

CASE NO. _____

51. Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

52. Defendants owed a duty to Plaintiffs and Class Members to exercise reasonable care in the design, construction, operation, management, use, maintenance, and inspection of Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention measures and devices.

53. Defendants breached their duty to Plaintiffs and Class Members by failing to properly design, construct, operate, manage, use, maintain and/or inspect Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention measures and devices, such that Deepwater Horizon caught fire, exploded, sunk, and continued to leak oil, resulting in a massive oil spill.

54. Defendants further breached their duty to Plaintiffs and Class Members by failing to properly hire, train, manage and supervise personnel on Deepwater Horizon, including the proper implementation and enforcement of applicable and appropriate regulations and safety measures, such that personnel could have prevented the blow out, and/or reacted to warning signs of the blow-out or the blow-out itself such that harm to Plaintiffs and Class Members could have been prevented or mitigated.

55. Defendants further breached their duty to Plaintiffs and Class Members by failing to properly take appropriate actions to prevent, control or contain the oil spill, including the failure to use a working BOP and/or the failure to use and operate available and alternative devices to prevent the massive oil spill.

56. Defendants acted negligently and carelessly without due regard for the safety of others and potential harm to Plaintiffs and Class Members.

CASE NO. _____

57. As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs and Class Members have incurred economic and other damages and are entitled to recover monetary damages for, but not limited to: loss of income and revenue, loss of their livelihood, the need to relocate, property damage and any incidental or consequential damages resulting from Defendants' conduct as alleged herein.

58. Defendants have conducted themselves in a manner which justifies an award of punitive damages.

59. Alternatively, Plaintiffs allege the applicability of the doctrine of *res ipsa loquitur*.

## COUNT II
## STRICT LIABILITY FOR ABNORMALLY DANGEROUS ACTIVITY
### (Against All Defendants)

60. Plaintiffs incorporate by reference the allegations in Paragraphs 1–47 above as if fully set forth herein, and further allege as follows:

61. By their very operation of Deepwater Horizon, Defendants were engaged in an abnormally dangerous activity.

62. Defendants' drilling operation at the Deepwater Horizon site was an abnormally dangerous activity because:

    a. it created a high degree of risk of harm Plaintiffs and Class Members;

    b. it involved a likelihood that the harm threatened by Defendants' conduct would be great;

    c. the risk of Defendants' drilling operation required that such drilling be carried on at their peril, rather than at the expense of the innocent Plaintiffs and Class Members who suffered harm as a result of the drilling operation;

CASE NO. _____

    d.    oil drilling is not a matter of common usage in the relevant areas of Florida;

    e.    it was inappropriate to the oil exploration area Defendants were operating in;

    f.    any value of the operation to the relevant Florida communities was outweighed by the abnormal risk of harm and actual harm suffered by Plaintiff and Class Members.

63.    At all times relevant to this action, Defendants were in control of Deepwater Horizon and its related drilling operations, as well as its personnel.

64.    The magnitude of the risk of Defendants' operations created an abnormal risk of physical harm to the waters of United States Gulf Coast, coastal and shore areas and contiguous environs, including those of the State of Florida; a harm that is characteristic of the risk posed by Defendants' operations, and one which has been suffered as a result of the massive oil spill emanating from the Deepwater Horizon site.

65.    The massive oil spill resulting from Defendants' abnormally dangerous activity causing physical harm to the environments in which, or to property by which, Plaintiffs and Class Members make their livelihoods, has caused harm and damage to Plaintiffs and Class Members within the scope of risk created by Defendants' abnormally dangerous activity.

66.    The Defendants' abnormally dangerous activity was carried on for their own purposes and created a risk to Plaintiffs and Class Members that was not a usual risk expected by Plaintiffs and Class Members or a usual incident to their lives or businesses.

67.    Plaintiffs and Class Members are entitled to compensatory damages and punitive damages for the harm suffered as a result of Defendants' abnormally dangerous activity.

CASE NO. _____

# COUNT III
## STRICT LIABILITY FOR PRODUCT DEFECT
### (Against Defendant Cameron)

68. Plaintiffs incorporate by reference the allegations in Paragraphs 1–47 above as if fully set forth herein, and further allege as follows:

69. At all times relevant hereto, Defendant Cameron was in the business of designing, manufacturing, marketing, selling, and/or distributing the BOP device(s) and system(s) used at the Deepwater Horizon site.

70. Defendant Cameron placed the BOP device(s) and system(s) at the Deepwater Horizon site into the stream of commerce.

71. The BOP device(s) and system(s) at the Deepwater Horizon site that were supplied by Defendant Cameron failed to operate as intended, if at all, and thus caused or contributed to the oil spill.

72. Defendant Cameron's BOP device(s) and system(s) at the Deepwater Horizon site were defective because they were defectively designed and/or were defectively manufactured such that they did not operate as intended to prevent or minimize the oil spill.

73. As a result of the defect(s), a massive oil spill emanated from the Deepwater Horizon site and has caused, and will continue to cause, harm and damages to Plaintiffs and Class Members.

74. At the time the BOP device(s) and system(s) used at the Deepwater Horizon site left Defendant Cameron's control, they were in a defective condition and thereby unreasonably dangerous to Plaintiffs and Class Members.

75. At all relevant times the BOP device(s) and system(s) used at the Deepwater Horizon site were used in the manner intended.

CASE NO. _____

76. Plaintiffs and Class Members were foreseeable bystanders harmed by the defect(s) in Defendant Cameron's product.

77. As a result of the defect(s) in Defendant Cameron's product, Plaintiffs and Class Members have suffered harm and damages in an amount to be determined at trial.

78. In addition to any compensatory damages that may be found, Defendant Cameron's intentional acts and gross negligence have entitled Plaintiffs and Class Members to punitive damages.

### COUNT IV
### VIOLATION OF FLORIDA STATUTE § 376.302
### (Against All Defendants)

79. Plaintiffs incorporate by reference the allegations in Paragraphs 1–47 above as if fully set forth herein, and further allege as follows:

80. The oil spill emanating from the Deepwater Horizon site, as a result of Defendants' conduct as alleged herein, constitutes a violation of *Florida Statute* § 376.302(1)(a), as a discharge of pollutants and/or hazardous substances into or upon the surface waters of the state or lands of Florida, as defined by *Florida Statutes* §§ 376.301(10), 376.301(11) and 376.301(13).

81. Defendants have otherwise violated the provisions of *Florida Statutes* §§ 376.30 to 376.317.

82. Defendants had a statutory duty to Plaintiffs and Class Members to design, construct, operate, manage, use, maintain, and inspect the Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention measures and devices, such that pollutants and hazardous substances were not discharged into and upon the surface waters and coastal areas of Florida,

CASE NO. _____

83. Pursuant to *Florida Statute* § 376.313(3) Defendants are strictly liable to Plaintiffs and Class Members as a result of their conduct which caused the prohibited discharge of pollutants and/or hazardous substances.

84. As a direct and proximate result of Defendants' breach of their statutory duties to Plaintiffs and Class Members, the oil spill emanating from the Deepwater Horizon site has caused detrimental effects to the United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs, which Plaintiffs and Class Members rely on for their income and livelihoods.

85. Plaintiffs and Class Members are entitled to statutory damages as well as compensatory damages for the harm suffered as a result of Defendants' conduct as alleged herein.

**WHEREFORE,** Plaintiffs and the Class Members request:

a. Certification of this matter as a class action;

b. Certification of each class as stated herein;

c. An order appointing Plaintiffs as representatives of the Classes;

d. An order appointing undersigned counsel as counsel for the Classes;

e. An award of such damages as are authorized by law, including compensatory, statutory and punitive damages;

f. An award of all reasonable costs and attorneys' fees incurred by Plaintiffs and Class Members;

g. Trial by jury of all matters so triable; and

CASE NO. _____

h.  Such other and further relief as the Court may deem just and proper.

DATED:  May 3, 2010.

RESPECTFULLY SUBMITTED BY:

By: *s/Jeremy W. Alters, Esquire*
    JEREMY W. ALTERS
    Florida Bar #111790
    jeremy@abbrclaw.com
    DAVID C. RASH, ESQUIRE
    Florida Bar #0977764
    david@abbrclaw.com
    Alters, Boldt, Brown, Rash & Culmo, P.A.
    4141 Northeast 2nd Avenue, Suite 201
    Miami, Florida 33137
    Telephone:    (305) 571-8550
    Facsimile:    (305) 571-8558
    Attorneys for the Plaintiffs

    -and-

By: *s/Stephen M. Slepin, Esquire*
    STEPHEN M. SLEPIN
    Florida Bar #100290
    slepin@maddoxhorne.com
    Maddox Horne Law Firm
    502 North Adams Street
    Tallahassee, Florida 32301
    Telephone:    (850) 222-6020
    Facsimile:    (850) 222-1249
    Attorneys for the Plaintiffs